## CHICAGO CHEESE CO. v. FOGG.

### (Circuit Court, N. D. Ohio, E. D.   December 8, 1892.)

1. CONTRACTS—CONSTRUCTION—EXTRINSIC EVIDENCE.

F. contracted to sell and deliver to the C. B. Co. a large amount of cheese, a small portion of which was delivered.   The C. B. Co. soon after failed, and, in consideration of indebtedness, by a bill of sale in writing, sold and transferred to A. S. W. & Co. the cheese then on hand, together with outstanding accounts due the assignor.   Soon afterwards the assignee transferred to plaintiff all its rights under the assignment.   In a suit by plaintiff against F. for $7,000 damages for failure to deliver the balance of the cheese covered by the contract with the C. B. Co.. and for $400, being the amount advanced to defendant upon the unfulfilled contract, the court heard oral testimony from the parties to the transaction, for the purpose of ascertaining what the parties meant by the terms of the several bills of sale.   From such testimony it appeared that, after a detailed examination by one of the firm of A. S. W. & Co. before the assignment was made to such firm, the only estimate put upon the assets representing the firm's claims against defendant was the $400; thus substantially admitting that no value was placed upon the claim sued upon in the first cause of action.   *Held,* that in the light of this extrinsic evidence the assignments did not transfer any unliquidated claim for damages by reason of defendant's failure to deliver the balance of the cheese covered by contract with the C. B. Co.

2. SAME—PROVINCE OF COURT AND JURY.

The construction of the written assignments in the light of the extrinsic evidence was not a question of fact for the jury, but was one of law for the court.

3. SAME—JURISDICTIONAL AMOUNT—PARTIAL FAILURE OF CAUSE OF ACTION.

Plaintiff having failed to show any title to the contract, his cause of action thereunder entirely failed, and the suit remained as one for $400, which was insufficient to support the jurisdiction of the circuit court, and a verdict was thereupon properly directed for defendant.

At Law.   Action by the Chicago Cheese Company against W. K. Fogg.   A verdict was directed for defendant.   On motion for new trial.   Overruled.

Williamson & Cushing and J. S. McClure, for plaintiff.
Wm. R. Day and J. W. Crane, for defendant.

RICKS, District Judge.   The plaintiff's petition in this case sets forth two causes of action.   In the first it claims damages for the breach of an alleged contract made on August 16, 1886, between the defendant and the Charles Baltz Company, of Chicago, Ill., by which the defendant agreed to sell to the said Charles Baltz Company 1,000 loaves of domestic Swiss cheese, and to deliver the same, as called for by it, at Chicago, Ill., on or before the last day of June, 1887, at the prices named, and varying as to the time for deliveries, and on payments specified, the loaves of cheese to vary from 125 to 180 pounds in weight, and to average not less than 150 pounds.   In September, October, and November of the same year, the defendant delivered on said contract some 7,429 pounds of the 150,000 pounds contracted for, and received pay for the same.   The vendee having failed, and being indebted to A. S. White & Co. something over $17,000, it assigned, transferred, and sold to said firm, on the 14th day of March, 1890, in consideration of $15,000, "the following goods and chattels, to wit, the cheese then on hand, the boxes and cheeses to be delivered on

hand at 73 Water street, together with the outstanding accounts due to Charles Baltz & Company." Five days thereafter, to wit, on the 19th of March, the said firm of A. S. White & Co. sold and transferred to the plaintiff, the Chicago Cheese Company, for a consideration of $15,000, "all the cheese and empty boxes now on hand or in stock, belonging to said A. S. White & Co., purchased by them from the Charles Baltz Company, or to which the said A. S. White & Co. are entitled by reason of their said purchase."

The last vendee brings this suit against the defendant, and claims damages in its first cause of action in the sum of $7,000, with interest, for the defendant's failure to deliver the balance of Swiss cheese covered by said contract of August 16, 1886. It claims in its second cause of action judgment for $400 and interest, for money advanced and paid by the Charles Baltz Company to the defendant on or about January 25, 1887, upon said unfulfilled contract of August, 1886. The defendant, in his answer, denied that the plaintiff had any right or interest in said claim upon which to base this suit, and denied any breach of contract, or that there was anything due to the plaintiff on either cause of action. The plaintiff, to maintain the issues made on its behalf, and to show its title to the claim sued upon, offered the two bills of sale or assignments above cited. The defendant objected to the introduction of said assignments, because upon their face they disclosed the fact that the claims sued upon in the first and second causes of action were not included in either of said instruments.

Upon the authority of the cases of Bradley v. Steam Packet Co., 13 Pet. 89, and of Reed v. Insurance Co., 95 U. S. 23, the court decided to hear oral testimony from the parties to the transaction, so as to put the court in the position of said parties at the time the transfers were made; not for the purpose of reading into those assignments or contracts any new conditions, or varying or changing their meaning, but for the purpose of ascertaining what the parties themselves meant by the terms used in the written bills of sale executed. For this purpose the court heard the oral testimony of Charles Baltz and George H. Wessling, the former the president of the Charles Baltz Company, and the latter the bookkeeper. Some of the original books of the Charles Baltz Company were offered, and entries therein relating to the various transactions pertaining to this contract were read and offered in evidence. Depositions of members of the firm of A. S. White & Co. were also read. All this testimony was heard by the court for the sole purpose of enabling it to intelligently construe the bills of sale or assignments upon which the plaintiff relied to establish its right and title to the claims upon which its suit was based.

After such testimony was heard, the defendant moved the court to direct the jury to return a verdict for the defendant, for the reason that the written assignments referred to did not in fact transfer to the plaintiff the claims sued upon in the first and second causes of action. It appears from said testimony, in addition to the facts already stated, that before the assignment of March 14, 1890, from the Charles Baltz Company to A. S. White & Co. was made, Mr. Ulric King, one of the said firm of A. S. White & Co., made a detailed examination into the assets of the Charles Baltz Company, and estimated their value as

closely as he could from the information before him.   Mr. King, in his deposition, states that after making this careful examination of the books and assets of the firm, the transferees, A. S. White & Co., agreed to purchase from the Charles Baltz Company all of its assets, which he estimated to be worth the sum of $15,000, and to credit that amount upon the indebtedness of $17,000 which was owing from the Charles Baltz Company to the A. S. White Company.   On cross-examination Mr. King admitted that the only evidences of indebtedness against the defendant found upon the books of the Charles Baltz Company were an open book account for $400, for money had and received from said firm by the defendant as an advancement upon the contract sued upon in the first cause of action, and an additional entry upon a memorandum or contract book, in pencil, which forms the basis for the contract set out in the first cause of action.   This pencil memorandum was entered by some one connected with the Charles Baltz Company, and is not signed by the defendant, but it is claimed was read to him, and approved by him as the contract between the parties.   Mr. King, in admitting that the only estimate he put upon the asset representing that company's claim against the defendant was $400, substantially admits that no value was put upon this claim sued upon in the first cause of action.   It is true that he claims he purchased all the assets of the Charles Baltz Company, and that such was the understanding between the parties; but, inasmuch as the indebtedness of the Charles Baltz Company was $17,000, and that firm was credited with only $15,000 upon said indebtedness, and that the assets making up this $15,000 of consideration were all valued and examined by Mr. King for the firm of A. S. White & Co. item by item, and that of all these assets the claims against Fogg, the defendant, were valued at only $400, it is hardly conceivable that in said assets was included a claim which, with interest, now amounts to over $9,000.   If this claim in fact passed, and was considered and included in the assets, it would seem no more than reasonable that it should have been added to the estimated value of such assets, which would have made their aggregate $24,000, and that upon such an approximate estimate they should have increased the amount allowed as a credit to at least the sum of $17,000, the total amount of the indebtedness due from the Charles Baltz Company.

It appears from the testimony that, after this detailed examination was made of the assets of the Charles Baltz Company by Mr. King, the terms of the assignment were reduced to writing.   We have a right to suppose they expressed in that instrument the exact nature of the assets they were purchasing, but when we examine this written instrument we find that it embraced only two classes of assets, to wit, the goods and chattels above enumerated, and the outstanding accounts due the Charles Baltz Company.   With the statement of Mr. King that the only item of value in the assets of the Baltz Company was the $400 claim covered by the outstanding account upon the books of said firm, we can readily see that the bill of sale was broad enough to cover the same. It is very significant that this instrument, evidently prepared with a great deal of care, omits the usual sweeping clause of transferring all the "rights, claims, credits, and accounts of every

kind" of the party whose assets were to be transferred. But at the time that Mr. King examined the assets of the Charles Baltz Company it is possible that this claim embraced in the first cause of action was considered absolutely worthless. The price of cheese in the market at the time of the alleged breach of the said contract may have so declined as to make this claim absolutely worthless, and, therefore, no provision was made in the bill of assignment to cover any such unliquidated claim for damages. For these reasons the court was of the opinion at the time of the trial that these written assignments did not transfer any unliquidated claim for damages such as is set forth in the first cause of action. The court was then of the opinion that the duty of construing the written assignments, with the aid of the extrinsic evidence before it, devolved upon the court, and was not a question of fact to be submitted to the jury; the court being further of the opinion that the plaintiff, having failed to acquire any title or interest in the claim sued upon in the first cause of action by the written assignments referred to, had no right to maintain said first cause of action, and that, so far as that was concerned, its suit must fail. The only matter in controversy, therefore, pending between the parties, was upon the second cause of action. The sum involved in this cause being only $400, with interest, so that the recovery could not in any event exceed that sum with interest, which would bring the judgment below the jurisdictional amount required, the court held that the second cause of action must likewise fail, and therefore directed the jury to return a verdict for the defendant, which was accordingly done.

This case is now before the court upon a motion for a new trial. Counsel for the plaintiff contend that the court erred in not submitting as a question of fact to the jury whether or not the claim sued upon passed under these written assignments from the Charles Baltz Company to A. S. White & Co., and from A. S. White & Co. to the plaintiff; and further contend that said written instruments, together with the extrinsic evidence heard, ought to have been submitted to the jury upon the issues defined. But, on a review of the authorities, and after careful consideration of the suggestions made by counsel, the court is still of the opinion that its direction to the jury in this respect was correct.

Counsel further contend that the court erred in not permitting the trial to proceed upon the second cause of action, and insist that the court having acquired jurisdiction of the parties and of the subject-matter when the amount in controversy was nearly $10,000, the jurisdiction continued, even after the first cause of action failed. Counsel cited several decisions where the principle here contended for was sustained, but in all those cases there was no question as to the plaintiff's title and right to the claims sued upon. In those cases the defenses interposed defeated the plaintiff's right to recover, but did not in any case show an absolute failure of the title or right to maintain the suit itself. In one case cited the statute of limitations was pleaded, and the statute was held good as to a large part of the claim sued upon, leaving a balance due below the jurisdictional amount. In that case the court proceeded to render judgment for such balance due, although such judgment was below the jurisdictional sum. But it must be re-

membered that the defense of the statute of limitations interposed did not affect the plaintiff's title to the obligations sued upon, or his right to institute a suit thereon. It related only to his right to recover the full amount claimed. Both his title to the instrument sued upon and his right to bring the action were unquestioned. In this case, however, the plaintiff absolutely fails to show any right, interest, or title to the claim sued upon in the first cause of action. It therefore had no right to bring suit upon the claim set forth in the first cause of action. Its right of action absolutely terminates, because no interest in that claim preferred is shown. The failure to show any such right to institute its suit on the first cause of action therefore leaves it a suit for $400, with interest, upon the second cause of action.

Under these circumstances, it seems plain that the jurisdiction of the court terminated when the first cause of action failed, and, this being apparent upon the face of the record, it was the duty of the court to proceed no further. I am therefore of the opinion that there was no error in the court directing the jury to return a verdict for the defendant, and the motion for a new trial is overruled.